Clerk, please call the next case. 2-2-4-0-7-5-8-W-C, City of Zion Police Dept, Appalee, by Derek Lloyd v. the Illinois Workers' Compensation Comm'n, et al., James Lebone, Appellant, by Daniel Johnson. Mr. Johnson, you may proceed. Thank you. Good morning, Your Honors. Counsel, my name is Dan Johnson and I'm appearing on behalf of the Appellant Petitioner, James Lebone. The Appellant respectfully requests reversal of the Circuit Court order that the Appellant's claim for benefits under the Illinois Workers' Compensation Act is barred by the equitable doctrine of collateral estoppel based upon the Appellant's prior award of non-duty pension disability benefits by the Zion Police Pension Fund. The issues presented for review before this Court are whether the Circuit Court applied the correct legal analysis when finding the Appellant's claim for benefits under the Illinois Workers' Compensation Act was barred by collateral estoppel, whether the Circuit Court correctly applied and interpreted the Pension Board's decision in finding the Appellant's claim for benefits under the Illinois Workers' Compensation Act was barred by collateral estoppel, and whether the imposition of collateral estoppel against the Appellant is fair and just. The central factor in dispute regarding the application of collateral estoppel to the present case is the identical issues requirement. The application of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior proceeding. The party asserting collateral estoppel bears the burden of showing with clarity and certainty that the identical question was decided in the earlier proceeding. The identical issue or identical question also must have been necessarily determined in the prior proceeding. The Appellant finds the case of Dembski v. Mundelein Police Pension Board to be very analogous to this current situation. The court in Dembski held that collateral estoppel did not apply as the first requirement of identical issues was not present. The court in Dembski found that the issues brought before the Industrial Commission was whether Dembski's accident arose out of and in the course of her employment, while the issue brought before the Pension Board in Dembski was whether the accident occurred during an act of duty as defined by the Police Pension Code. The court in Dembski held that since the act of duty issue was not litigated during the workers' compensation hearing, that collateral estoppel did not apply because that first requirement was not satisfied. In addition to that, the court in Dembski argued that it wasn't against the manifest weight of the evidence for the Pension Board to actually find that Dembski suffered no injury at all in the agility test, which was directly contradictory to the Industrial Commission's finding of compensability. So simply, the award of non-duty pension disability benefits by itself does not preclude the appellant from filing and pursuing a compensable claim for benefits under the Illinois Workers' Compensation Act. The Commission's decision and causal connection finding is not contrary and does not conflict or is in opposition to the Pension Board's award of non-duty disability benefits or its decision. They contain the same date of injury, same body part injured, same history of injury, same mechanism of injury. I believe, especially in light of McAllister, there's a slippery slope argument where police officers doing clerical tasks or potentially charitable activities such as shop with a cop could be performing activities of daily living or ordinary citizens and suffer compensable work injuries, but not necessarily rise to the level of special risk that would offer them an active duty pension benefit. The Pension Board decision, the appellant argues the Pension Board decision basically stated it was irrelevant and immaterial whether the appellant injured his right wrist at the training exercise in May 2015, as their final decision would not have changed regardless. I think it's important to point out the crux of this dispute seems to revolve around one massive sentence in the Pension Board decision. It's on page 10 of the appendix and page 8 of the actual Pension Board decision. And I think it's important to read this. While the board is not convinced the applicant was injured while performing the burpee exercises, given its finding the applicant was not credible in his testimony, comma, even if he did sustain an injury during the exercise, it would not qualify as an active duty as defined by Illinois case law. I think that comma not being a period is important in that you have to look at that sentence in conjuncture with each other. And it's not two separate phrases or sentences, it's one. In regards to the causation of the appellant's right wrist injury, the Pension Board made no findings of fact or conclusions that he didn't suffer an injury. And the actual causation issue was not a necessary nor material analysis for the Pension Board's decision and factual findings and award. Um, there's simply no factual findings in the Pension Board decision or conclusions that can be relied upon for collateral estoppel purposes. In regards to an actual moving on to the unfairness or injustice, assuming the court finds that the Pension Board necessarily fully determined the causation of the appellant's right wrist injury in its decision and finds that collateral estoppel is applicable in this the appellant argues the imposition of collateral estoppel in this present case would be unjust and unfair. All the medical evidence submitted at the Pension Board hearing contained very similar dates of injury, consistent histories of injuries, and the Pension Board awarded non-duty disability benefits based on an application with an onset date of May 8, 2015. So I don't find any sort of real evidence that there was no injury or accident that occurred on that date. Furthermore, it was clear in the Pension Board decision that it was their decision wasn't going to change. The appellant was not represented in the second portion of his pension hearing and had no incentive financially or otherwise to litigate or motive, you know, real motivation to appeal that decision because it was clear that the physical fitness activity he was performing would not rise to the active duty level because it wasn't considered a special risk. So let me stop you for just a moment. Did the Pension Board find that he was not injured in that at that particular time because they found that he didn't report any kind of an accident for over two weeks that he was able to continue full duty work after the alleged incident? How do they award any type of injury if they didn't find that it occurred during doing the burpee exercise? The court brings a great point up. I again refer to the matter in Dembski. The Pension Board in Dembski was able to say that no injury had occurred at all, and that's not what happened in this present case. The application for duty and active duty and then non-duty benefits was based on the same accident date, same history of injury, and the Pension Board in this case made an award of non-duty benefits based on that application. And I think that that's binding for collateral estoppel purposes potentially against the FLE. So I think that is a fair point, but I don't see anything in the findings of fact or conclusion sections, Your Honor, that indicate that was the case because they could have denied it in its entirety. So that's what I'm asking. Can you tell us where the accident, where the Pension Board found the accident occurred? I mean, are they saying that it occurred as he stated, even though they point out that there were two weeks of, let me see here, failure to report the accident for two weeks, failure to seek immediate medical care, ability to work full duty without issue for several weeks following the alleged incident? So I got the conclusion section, Your Honor, of that, the Pension Board decision where it says, because the capacity he was performing at the time of his injury did not involve a special risk as required to establish injuries resulted from an active duty as defined by law. That's why they voted five to zero to deny a line of duty disability pension. They could have established the fact that they didn't believe or concluded that the applicant suffered no injury at all, but that's not what was said in the conclusions. So that's the part that I'm confused about, basically, with the record from the Pension Board hearing, is that I understand what you're saying. They're saying it didn't occur during active duty, job duties. It was something other. But then they give a bunch of reasons that sound like they're saying there was no accident, at least at that particular time. Like they're assuming that an accident occurred sometime thereafter when they point out that he didn't report anything immediately, that he went on to continue working full duty for several weeks, that he qualified with his firearm after that without any issues. So I'm not sure where they're finding what their reasoning was that there was an accident or when it occurred, if it didn't occur at the time that he said it did. Am I making that clear what I'm trying to? Yeah, I understand, Your Honor, and I agree with you, but I believe just based on the actual decision that we have before us, and that's all I can kind of go on. But is it the point that he had doctors say he was disabled, but the Pension Board didn't believe it happened during the burpees? So he got his non-duty pension because he was disabled from his ability to do police work. That's it. Yeah, my response to that would be that. So a police officer can have a car accident, which is non-duty related, and become disabled and then can get a non-duty pension, right? Sure. And it doesn't have to be in any way work-related. That disability is just there, and he can't do his job, and he has this benefit available through the statutes. Sure. Now, that application... There's no reason to imply that in giving the non-duty pension, the board was saying he had an accident at work. There's no implication that way. Or do you contend otherwise? I contend otherwise, Your Honor, respectfully. If you look at the findings of fact section, it clearly states that he had applied for a line-of-duty or alternatively non-line-of-duty pension. Exactly. Yes, he did. Based on a May 8, 2015 accident, and there was nothing else to say that that didn't happen. But you don't need to have an accident that is in any way work-related to get a non-duty pension, right? You have to have an onset date, I believe, and some sort of disability date. Then at some point, he got this, you know, wrist injury, whatever it was, although he had had the causation fixed to that burpees. The board didn't believe it. I believe that they did believe it based on the medical testimony that was provided to them. That's why they... Is that in the record? It does say that the three pension board examiners found... That he was disabled. Yes. Thank you, Your Honor. When was the onset date since you brought that up, Mr. Johnson? May 8, 2015. During the training exercise where the mechanism of injury was claimed to be this firearm burpee training or something. That's correct, Your Honor. Okay. And so... And so the pension board found what to give non-in-line-of-duty pension benefits? I believe, based on the fact that he had suffered a disability resulting from this May 8 onset date that he had filed, and that he had met his burden because of the actual positions that he was seen for the pension, they determined that he was disabled. And so they awarded non-duty benefits based on that application. My argument is that if he made an application with the May 8 onset date with the same history of injury, that if the pension board didn't find that he was injured that date, they could have rejected it and made him reapply or try to do a different application at a different onset date. The court in Demske shows that a pension board can reject an application if they don't believe the injury occurred the way it's been stated or applied for. And I feel like in this particular situation, it is pretty clear in the factual findings that he applied for both line-of-duty and non-line-of-duty pension benefits based on the same date and the same accident. So let me ask you a question just to clarify that. Assuming that the pension board is basing their non-duty award on the accident as he described it from May 8, tell us in your mind how they don't find that active duty or a duty-related accident. I mean, if he was at a training exercise for his job and was injured on that date as he described, how did they get around finding that that was a duty-related accident? So, Your Honor, case law, and I believe both parties have cited Swoboda, has came forth and stated that physical fitness or agility exams or testing does not rise the level of special risk necessary to award a police officer a line-of-duty pension benefit. And so, very similar in Dembski, she was injured in a physical agility test and the pension board said that that physical fitness activity wouldn't rise to the level of active duty. Irrespective of that, they also found that they didn't believe in Dembski was injured during that physical agility test. That makes sense to me. If you stop right there, that makes sense. Except for the fact that they go on to list all of these reasons why they don't believe the accident occurred on May 8. In other words, he didn't report it, he continued working full-duty activities, he qualified with his firearm without any indication of pain or discomfort. So, it seems like this is where I get disconnected. It seems like I agree that they're basing it on May 8, but then they're giving reasons why nothing occurred on May 8. So, I'm looking for some other date or some other occurrence that they're saying, okay, this is when the disability happened, this is the incident that occurred, and I don't find any. So, I'm really confused how they came up with what they're doing and I don't know if you want to add to that. I know your time's up, but I'd like if you have any clarification for me on that point, I'd love it. I wish I could clarify that, Your Honor. I just find it really important to note that they said that even if he did sustain an injury, it wouldn't have mattered. And so, it wasn't material to their analysis. Thank you. Thank you. Bill, we can't hear you. I'm choking. We cannot hear you. There you go. Now we can hear you.  Okay. Any other questions from the court? No? Okay. Mr. Lloyd, you may reply. Yes. Good morning, Justices, counsel. May it please the court. My name is Derek Lloyd. I represent the appellee of the City of Zion Police Department in this matter. The primary issue in this case is whether or not petitioners should be barred from relitigating the issue of causation of an accident under the doctrine of collateral estoppel. A few quick facts, just for background. Counsel is correct. Petitioner is alleging that he injured his right wrist as a result of performing burpee exercises at firearm training May 8, 2015. On March 21, 2016, he filed an application seeking a line-of-duty disability pension under Section 114.1 of the Illinois Pension Code. In that application, he alleged that he could no longer work as a police officer as a result of an injury to his right wrist while performing burpee exercises on May 8, 2015. He thereafter files an application for adjustment of claim with the Illinois Workers' Compensation Commission, seeking benefits under the Illinois Workers' Compensation Act due to injuries arising out of that same May 8, 2015 accident, where he claims he injured his right wrist while performing burpee exercises. He proceeds to trial on the pension case on November 14, 2017 and April 18, 2018. And the pension enters a decision on July 18, 2018. That pension decision denied petitioner's claim for a line-of-duty disability pension after finding the petitioner did not injure his right wrist while performing burpees on May 8, 2015. They did award a not-line-of-duty disability pension. And based upon the line of questioning, I do want to address that right off the bat. With respect to the award of a not-line-of-duty disability pension, as Justice Mullen correctly out, a not-line-of-duty disability pension means the petitioner is simply unable to perform the work of a police officer. And it's as a result of something, of an injury caused by something other than a work or active duty. So in that matter, the idea of when the manifestation date occurred isn't really the important analysis when awarding a not-line-of-duty disability pension. The important analysis there in terms of awarding benefits would be the last state of employment and work, because at that point, they're trying to calculate when petitioner's pension benefits should begin. So the manifestation date is less important because the analysis when awarding a not-line-of-duty disability pension is not upon whether or not the actual inciting injury itself was a work-related cause. With respect to collateral estoppel, you know, the purpose of collateral estoppel is to bar re-litigation issues before we run so fast into all of this other stuff. So he has a not-in-line-of-duty pension awarded to him, correct? Correct. And that examination date for his application, the award was, I'm trying to figure out, you're trying to say it doesn't, are you saying it didn't matter about the training incident for the non-in-line, or whatever you want to call it? Sure. So the analysis of how petitioner injured himself is important with respect to the line-of-duty disability pension. So he's trying to seek a line-of-duty disability pension first and foremost, and he's seeking the not-line-of-duty disability pension, the alternative. So in the event they find he's not entitled to a line-of-duty disability pension, he could thereafter seek a not-line-of-duty disability pension if it's found— Is that true of every pension application? Assuming that they do seek for the alternative not-line-of-duty disability pension, obviously they just file for the line-of-duty, and they don't seek for the not-line-of-duty in the alternative. They are hampering themselves, but it's not an automatic. Okay, so let me stop you there, then. I understand that part, and Justice Holdridge, if you want him to continue with his answer for your question, I won't interrupt him. Well, go ahead. I'm sure I'll continue, perhaps. Okay, so that being the case for the pension application for a non-duty injury or pension, under the Illinois Workers' Compensation Act, we would have to have an onset date. We'd have to have some sort of an incident. We'd have to have something of that nature in order to award benefits. Is that correct? Absolutely. So the analysis for the Workers' Compensation Act case is actually going to be most closely aligned to the analysis for the line-of-duty disability pension, which is what the pension board had here, and that was the first thing that they analyzed and decided. So in that line-of-duty disability pension case, the pension board has to determine whether or not the accident occurred, whether or not, if the accident occurred, it arose out of the act of duty, and then also whether or not the injuries themselves were actually caused by the claim accident itself. And the two issues of did the accident occur and causation are both identical in a line-of-duty disability pension case as well as in a workers' compensation case. And in this case, the pension board is specifically finding that petitioner's claim of how he injured his right wrist, performing burpees on May 8, 2015, is not how he injured his wrist. They identify, as Your Honor pointed out, six different reasons why they found the petitioner was not credible and why he did not clearly injure his wrist at that time. And while counsel argues that the pension board stated it was irrelevant and imminent. Lloyd, finish your argument. In other words, because they found that that was the denial of an act of duty, right? That's what you're saying. But I thought, what if anything did they find to deny him an act of duty? That his injury to his wrist didn't occur in the way it occurred or it didn't occur during the training exercise? Because I think you'll concede that our training, well, maybe not, our training exercise injuries, acts of duty. Well, I think the analysis of whether or not it's an act of duty or not is a red herring in this case. Because while that is an issue that was also decided by the pension board, the primary basis for the denial and the first thing that they talk about is the fact that they find that his right wrist injury was not caused by the burpee activities. That's an issue of causation. That is an identical issue per village of El Cid, Porto Caso, between both the line disability pension case and the Illinois workers' compensation case. So whether or not training exercises qualify as an act of duty, that's immaterial to the analysis in this case. Because again, the primary- Is that generally answerable as yes or no? Could you clarify? I don't understand your question. Let's say it's out there. Answer it. Is an injury during training exercises an act of duty? Yes or no? I would say likely generally no. But again, I believe that it could be fact-dependent. And again, that's an issue for a pension board, not necessarily on the workers' compensation side, which again, we're not necessarily here to relitigate and determine the reasonableness of the decision of the pension board here. We're here to determine whether or not collateral estoppel applies here between the pension board decision that became final and the workers' compensation claim that's still pending. I mean, if Petitioner felt as though there was an issue with the analysis of the pension board decision, he had every opportunity to file an appeal of that decision. He elected not to do so. He allowed that decision to become final. So, what you're saying is the source of your estoppel argument is that there is a finding by a tribunal that no accident occurred. It's a finding that it's twofold. It's the finding that the accident did not occur and that the right wrist injury was not caused by any accident at that time. So, the finding is that Petitioner's right wrist injury was not caused during the training activities on that day. That's what the pension board filed. And that is a direct issue that needs to be found by the commission in the affirmative in order to award benefits under the Illness Workers' Compensation Act. It is a clearly identical issue in both cases. Like I said, this is pretty much identical to the village of El Sabib, Puerto Caso. So, you're arguing that the issue before the pension board is identical to the issue before the commission. Is that correct? That is absolutely correct, Your Honor. Okay. That being, obviously, the issue of whether or not the accident occurred and whether or not the injuries were caused by that accident. Unless the accident is just different before one tribunal versus the other, right? Right. And in this case, Petitioner is alleging the exact same mechanism and the exact same facts of accident in both the pension case and in the work comp case. Both cases arise out of the same set of operative facts that Petitioner's claim that his right wrist injury was caused by the training activities on May 8, 2015. Okay, thank you. No problem. I know I just brought up the village of El Sabib. The one thing I wanted to kind of talk about is, so again, village of El Sabib, again, involved a police officer seeking benefits under the Illinois Pension Code under Section 114.1, as well as benefits under the Illinois Workers' Compensation Act. In the village of El Sabib, that officer was claiming that he injured his low back while arresting an individual. The workers' compensation claim proceeded to trial first in that case, and there was a finding that Petitioner's low back injury was not caused by the arresting the fact. So basically, there's a finding by the Illinois Workers' Compensation Commission that back injury was not caused by the alleged work accident. The appellate court found that the pension board in that case was actually collaterally stopped from relitigating the issue of whether or not the low back injury was caused by the identical. And again, that's exactly what we have here in this case. We have a finding by the pension board that Petitioner's right wrist injury was not caused by the burpee exercises on May 8, 2015. It's identical in both cases. We have the identicalness of both issues. And again, Petitioner relies on Dembski. He quoted it a bunch during his oral arguments. And again, Dembski is, as I indicated before, a complete red herring. That is the issue of arising out of in the course of versus specialized risk. That's a completely separate issue to the issues that we're talking about here. We're talking about whether or not the accident occurred and whether or not the injuries were caused by the alleged mechanism of injury. So this whole analysis of specialized risk and right in active duty versus arising out of in the course of again is red herring. It's immaterial. I'm moving on to Petitioner's attorney's argument about fairness and looking at the caseload. The primary issue about fairness usually arises when there is some type of issue with respect to the fair and full opportunity to litigate the case, the first case. And I don't think that's what we have here. Petitioner admitted during his trial that during the pension board, he was able to be represented by an attorney, and he was. He was able to present evidence and did, in fact, present medical evidence. He was able to testify on his own behalf. He was able to call any additional witnesses he wanted to. He also himself presented for pension board examinations by their doctors. He also had an opportunity to appeal the decision in the event he did not agree with it. In this case, he had every opportunity to fully and fairly litigate that claim. Now, counsel argues that he had no incentive to fully litigate and seek the line of duty disability pension over the not line of duty disability pension from a financial perspective, and that's just patently false. If you look at the difference between the line of duty disability pension and not line of duty disability pension, there's a significant financial incentive for an individual to seek line of duty disability pension. That's why most injured officers and firefighters are usually going for that line of duty disability pension first. A line of duty disability pension, you get 60 percent of your pay compared to 50 percent. A line of duty disability pension is tax free compared to tax. Likewise, a line of duty disability pension includes annual increases at a certain age, whereas there is no annual increase with a not line of duty disability pension. I mean, these are significant financial incentives for an individual, and again, this is why so many of these officers and firefighters are seeking the line of duty disability pension. Finally, I would just like to point out that the commission's decision, well, you're not bound by it, you shouldn't provide it any deference as we're reviewing this to know, but it was also just wrong as a matter of law. Their denial of the collateral estoppel defense was based solely upon privity, which, again, I think there's no dispute between the parties at this point that privity was met in this case. But the commission denied the collateral estoppel defense because they didn't see privity between the respondent, the Zion Police Department, and the Zion Police Pension Board, which, again, is just wrong. Their correct analysis is the party against whom collateral estoppel was asserted. In this case, that's Petitioner. Petitioner was clearly a party to both cases. I believe that the circuit court, when reviewing this case, hit the nail right on the head. They correctly identified that all three elements of collateral estoppel were met, and that Petitioner should have been stopped from relitigating the issue of whether or not he injured his right wrist while performing burpees. I ask that this Honorable Court please affirm that decision. Thank you. Any further questions for the court, for counsel? Okay. Okay. Counsel, you may reply. Thank you, Your Honor. I will just go to the pension decision. If you look at it closely, it indicates that the applicant, the appellant in this case, admitted he was performing a physical fitness burpee exercise when he claims he was injured. The courts look at the circumstances involved and the overall risk associated with those circumstances at the time of injury. For example, having a chair roll out from underneath the officer as he attempted to sit down involved no activity of risk unique to the police profession. Likewise, exiting a vehicle to place a written citation on another vehicle involved no activity or risk unique to the police profession. Significantly, lifting weights as part of a physical fitness test involved no activity or risk unique to the police profession. A majority of those injuries would not, you know, may not rise to the level of special risk necessary for an active duty pension disability award, but they would certainly expose or be potentially compensable under the Illinois Workers' Compensation Act. So I don't think this is a red herring argument whatsoever. In fact, there's no such finding anywhere in the pension board decision that says that the claimant or the appellant did not suffer a right wrist injury. It just clearly states that the active duty definition is not so broad as to embrace physical fitness activities in which individuals in ordinary walks of life participate. The pension board indicated that. Counsel, excuse me for interrupting, but I mean, I'm reading paragraph eight, which I think you're reading from, or excuse me, page eight. Yep. It says, while the board is not convinced the applicant was injured while performing the burpee exercises, given its finding, the applicant was not credible. Then it goes on to propose this alternative theory of why he wasn't entitled. And it, you know, refutes that as well. But it does seem to me reading it that they do find they are not convinced he was injured doing burpees. So that concerns me. I understand your concerns, Your Honor, and I believe that there's a comma after that credit was not credible in his testimony, comma. And even if he did sustain an injury during the exercise, it would not qualify as an active duty. Therefore, I believe that affirms the fact that there was an immaterial and not necessary analysis for the pension board to find the actual causation issue for the right wrist because the activity that the applicant alleged he was injured in would not have arised to the active duty could do the special risk standard set forth for police officers. So I believe that I understand the court's concern, but I believe that comma is significant. If it was a period, I would believe that there's a stronger position for that. Now, I also believe in ALSEP, the Workers' Compensation Commission found no injury and accident. The Workers' Compensation Commission and the act requires the injury be a cause. It could be one of a thousand, a cause, not the cause of an injury. And so if the commission, the Workers' Compensation Commission finds no accident, no injury, it would make sense that that would be have a stop all purposes for a much narrower, stricter, special risk standard and for a police officer pursuing a pension. And so I believe the case law in Demske is extremely analogous to the current situation. In fact, it even provides an avenue for the commission to find a contrary decision as long as it has a factual basis that's not against the manifest way to the evidence. So just to summarize, I believe that there's case law that supports the appellant's position and that this honorable court should respectfully reverse the circuit court's order and reinstate the commission's decision in its entirety. So thank you. Thank you, counsel. Are there any further questions for counsel? No? Okay. Well, thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement. A written disposition shall issue and the clerk of our court will escort you out of our remote courtroom at this time and we'll proceed further. Thank you. Have a good morning. Thank you, Harrison. Thank you, Your Honor.